UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| RICHARD E. SUYDAM, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 2:14-cv-00047-JDL |
| | ) | |
| CARLO PUIIA, et al., | ) | |
| | ) | |
| Defendants | ) | |

**RECOMMENDED DECISION ON DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

In this action, Plaintiff Richard Suydam alleges that Defendant Carlo Puiia, in his former capacity as town manager for Defendant Town of Rumford, violated Plaintiff's constitutional rights when he denied Plaintiff the ability to possess and display signs in a meeting at the Rumford Town Hall.

The matter is before the Court on Defendants' Motion for Summary Judgment (ECF No. 32). Following a review of the pleadings, and after consideration of the parties' arguments, I recommend that the Court grant the motion.

**BACKGROUND**

On February 4, 2014, Plaintiff filed with the Court a document, which the Court construed as a complaint, in which document Plaintiff described an incident that occurred "on or about September 5, 2013." (ECF No. 1.) According to Plaintiff, Defendant Puiia told Plaintiff that he could not "bring … signs quoting, 'SAVE RUMFORD' into the general hall," because "there is voting going on." (*Id.* at 1.) Plaintiff asked for an explanation in writing, which Defendant Puiia declined to provide. (*Id.*) In fact, no voting occurred that evening. (*Id.*)

Plaintiff asserts that he attended a similar meeting the preceding summer, at which meeting several individuals wore t-shirts saying "Save GRCC," but Defendant Puiia did not deny the individuals entrance to the meeting.  (*Id.* at 1 – 2.)  Plaintiff describes himself as a 59 year old black male, and alleges that Defendant Puiia violated his rights under the First Amendment, the Fourth Amendment, and the Fourteenth Amendment.  (*Id.* at 2.)

At the 2013 annual meeting for the Town of Rumford, the voters rejected the proposed budget.  (Defendants Statement of Material Facts (DSMF) ¶ 1.)[1]  The Town Board, therefore, initiated a process to develop a revised budget for voters to consider.  (*Id.* ¶ 2.)  The process involves multiple steps, including board meetings to create the revised budget and a meeting at which the voters would be permitted to comment upon the proposed revised budget.  (*Id.* ¶ 3.)

Defendant Puiia considered the meetings that were convened to develop a revised budget to be an extension of the annual budget meeting.  (*Id.* ¶ 4.)  On September 5, 2013, the Board held two meetings to finalize the proposed revised budget.  (*Id.* ¶ 5.)  Pursuant to the established process, upon the Board's approval of the proposed budget, the clerk would prepare absentee ballots to be used by voters.  (*Id.* ¶ 6.)  Defendant Puiia understood that the town clerk prepared absentee ballots following the September 5 meetings.  (*Id.* ¶ 7.)  Defendant Puiia does not recall discussing the signs with Plaintiff on September 5.  (*Id.* ¶ 8.)

On September 19, the Board met to take public comment on the proposed revised budget.  (*Id.* ¶ 9.)  Defendant Puiia understood that the clerk was processing absentee ballots for the vote

---

[1] In support of their motion for summary judgment Defendants submitted a statement of material facts, which statement contains facts set forth in separately numbered paragraphs supported by record citations, in accordance with Local Rule 56(b).  In opposition, Plaintiff has not admitted, qualified, or denied Defendants' statements, in violation of Local Rule 56(c).  Pursuant to Local Rule 56(f), facts contained in a statement of material facts "shall be deemed admitted unless properly controverted," if the facts in question are "supported by record citations."  Consequently, the following facts are deemed admitted for purposes of Defendants' motion.

on the revised budget.  (*Id.* ¶ 10.)  Defendant Puiia also believed that state law prohibited certain activities during elections and that the prohibitions applied to the meeting that evening.  (*Id.* ¶ 11.)

Defendant Puiia met Plaintiff at the Town Hall before the Board's meeting on September 19.  (*Id.* ¶ 12.)  Plaintiff appeared at the meeting with two signs, one of which said "Save Rumford." (*Id.* ¶ 13.)  Plaintiff is uncertain as to what was written on the other sign.  (*Id.* ¶ 14.)  Defendant Puiia approached Plaintiff before the meeting and explained to him that there was voting taking place that day.  (*Id.* ¶ 15.)  Defendant Puiia then asked Plaintiff to leave the signs outside the meeting room.  (*Id.* ¶ 16.)

Defendant Puiia's request for Plaintiff to leave the signs outside was not based on the content of the signs.  (*Id.* ¶ 17.)  Defendant Puiia also did not mention the content of the signs during his discussion with Plaintiff.  (*Id.* ¶ 18.)  Defendant Puiia asked Plaintiff to leave the signs outside the meeting room because Defendant Puiia believed that voting would occur, and believed that state law prohibited the display of the signs during voting.  (*Id.* ¶¶ 19 – 21.)

Plaintiff placed the signs in the hall outside the meeting room.  (*Id.* ¶ 22.)  No other persons at the meeting had signs.  (*Id.* ¶ 23.)  Plaintiff attended the entire September 19 board meeting, but did not comment during the public comment portion of the meeting.  (*Id.* ¶¶ 24 – 26.)

At his deposition, Plaintiff testified that he did not know that Defendant Puiia was enforcing a municipal policy; Plaintiff believed that Defendant Puiia made up the rule at the meeting.  (*Id.* ¶ 29.)  Plaintiff also testified that no voting occurred at the September 19 meeting. (*Id.*)[2]

---

[2] In his written opposition to the motion, Plaintiff maintains that the incident involving his signs occurred at the September 5 meeting rather than the September 19 meeting.  (Response at 2, ECF No. 45.)  Plaintiff, however, includes no specific record citation in support of the assertion.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).  "After the moving party has presented evidence in support of its motion for summary judgment, 'the burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor.'" *Woodward v. Emulex Corp.*, 714 F.3d 632, 637 (1st Cir. 2013) (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 158 (1st Cir. 1998)).

The Court reviews the factual record in the light most favorable to the non-moving party, resolving evidentiary conflicts and drawing reasonable inferences in the non-movant's favor. *Hannon v. Beard*, 645 F.3d 45, 47-48 (1st Cir. 2011).  If the Court's review of the record reveals evidence sufficient to support findings in favor of the non-moving party on one or more of his claims, a trial-worthy controversy exists and summary judgment must be denied to the extent there are supported claims.  Unsupported claims are properly dismissed.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses.").

## DISCUSSION

Defendants argue that the undisputed facts entitle them to judgment because (1) the meeting in question was a "limited public forum;" (2) Defendant Puiia did not prevent Plaintiff from speaking during the public comment portion of the meeting, and (3) Defendant Puiia's request for Plaintiff to leave the signs outside of the meeting was a content-neutral decision based on his understanding, or misunderstanding, of state election law, 21-A M.R.S. § 682(3). [3]  (Motion

---

[3] Maine election law provides:

at 1, 7 – 10.)  Defendants also argue that qualified immunity precludes recovery against Defendant
Puiia, and that the record lacks evidence of a municipal policy or custom to support Plaintiff's
claim against Defendant Town of Rumford. [4] (*Id.* at 13 – 16.)

## A.  Defendant Puiia's Claim to Qualified Immunity

Defendant Puiia argues that qualified immunity precludes recovery against him.  More
specifically, Defendant Puiia contends that he is entitled to summary judgment because a
reasonable official in his position would have viewed the budget meeting as a "limited public
forum" and would not have known that a content-neutral decision barring signs from the meeting
would violate the First Amendment.

Because Plaintiff's claim arises under 42 U.S.C. § 1983, and because Plaintiff seeks to hold
Defendant Puiia liable in his personal capacity, qualified immunity is potentially applicable.
*Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982).  "Qualified immunity shields an officer from suit
when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the
law governing the circumstances she confronted."  *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)
(citing *Saucier v. Katz*, 533 U.S. 194, 206 (2001)).  "This strain of immunity aspires to 'balance

---

**3. Advertising prohibited.**  A person may not display advertising material; operate an advertising
medium, including a sound amplification device; or distribute campaign literature, posters, palm
cards, buttons, badges or stickers containing a candidate's name or otherwise intending to influence
the opinion of any voter regarding a candidate or question that is on the ballot for the election that
day on any public property located within 250 feet of the entrance to either the voting place or the
building in which the registrar's office is located.  The term "sound amplification device" includes,
but is not limited to, sound trucks, loudspeakers and blowhorns.

This provision is subject to certain exceptions, none of which applies here.  *Id.* § 682(3)(A) – (C).  The parties do not
disagree that this prohibition on "advertising" would have prevented Plaintiff from bringing his signs into an election.
However, they appear to agree that the September meetings were not elections.  For these reasons, arguably Defendant
Puiia was mistaken concerning the impact of Maine election law.

[4] The filings reveal a question as to whether Plaintiff has asserted a claim under the Equal Protection Clause.
Assuming, arguendo, that he intended to assert such a claim, Plaintiff has failed to state such a claim because his
allegations are entirely conclusory.  Additionally, Plaintiff's summary judgment filing lacks any facts that could
support a finding that Defendant Puiia harbored any racial bias or other form of irrational bias.  *Knowlton v. Shaw*,
704 F.3d 1, 11 (1st Cir. 2013) (explaining that an equal protection claim requires "class-based, insidiously
discriminatory animus") (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).

[the] desire to compensate those whose rights are infringed by state actors with an equally compelling desire to shield public servants from undue interference with the performance of their duties and from threats of liability which, though unfounded, may nevertheless be unbearably disruptive.'" *Cox v. Hainey*, 391 F.3d 25, 29 (1st Cir. 2004) (quoting *Buenrostro v. Collazo,* 973 F.2d 39, 42 (1st Cir. 1992)).

Government officers are entitled to qualified immunity unless they violate a constitutional right that was "clearly established" when they engaged in the conduct at issue.  *Hunt v. Massi*, 773 F.3d 361, 367 (1st Cir. 2014).    Defendant's assertion of qualified immunity thus requires the Court to assess:  (1) "whether the facts, taken most favorably to the party opposing summary judgment, make out a constitutional violation" and (2) "whether the violated right was clearly established at the time that the offending conduct occurred." *Ford v. Bender,* 768 F.3d 15, 23 (1st Cir. 2014).  When the Court considers whether the constitutional right was clearly established at the time, the Court must determine (a) "whether the contours of the right, in general, were sufficiently clear," and (b) "whether, under the specific facts of the case, a reasonable defendant would have understood that he was violating the right." *Id.*

The qualified immunity analysis must include a consideration of the particularized facts of the case, not broad general propositions.  *Hunt*, 773 F.3d at 368.  "To be clearly established, the contours of this right must have been 'sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.'"  *Id.* (quoting *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014)).  "In other words, 'existing precedent must have placed the ... constitutional question beyond debate.'"  *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S. Ct. 2074, 2083 (2011)).

Given that Defendant Puiia's contention that the meeting constitutes a limited public forum informs the assessment of Defendant's claim to qualified immunity, the analysis begins with consideration of Defendant's public forum argument. While the term "limited public forum" has been used to describe a variety of situations, the First Circuit considers the term to describe non-public forums.[5] *Curnin v. Town of Egremont*, 510 F.3d 24, 28 (1st Cir. 2007); *Ridley v. Mass. Bay Transp. Auth.*, 390 F.3d 65, 76 n.4 (1st Cir. 2004). In this case, Defendants specifically assert that the Town Board convened the September 19 meeting to take public comment. (DSMF ¶ 9.) A town meeting scheduled for the express purpose to consider public comment cannot fairly be viewed as a "non-public forum."

Nevertheless, the nature of the session is significant to an assessment of the scope of Plaintiff's right to participate in the session. In a municipal budget process such as the process reflected by the record, members of the public do not participate in a traditional or designated public forum. Instead, members of the public are actually participants in the deliberations of a legislative body. *Curnin*, 510 F.3d at 29. The First Circuit has held that a forum analysis (i.e., whether the forum is public) provides "an inappropriate model" for determining speech rights when legislators are engaged in the deliberative process. *Id.* [6]

In *Curnin*, the plaintiffs owned property within the Town of Egremont, Massachusetts, but they were not registered voters.[7] Because they were not registered voters, plaintiffs did not qualify

---

[5] The distinction between a public forum and a non-public forum is significant. The government may exclude speakers from a public forum only when the exclusion is both "necessary to serve a compelling state interest" and "narrowly drawn to achieve that interest." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 800 (1985) (citing *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983)). However, the government may restrict access to a non-public forum if "the restrictions are 'reasonable and [are] not an effort to suppress expression merely because public officials oppose the speaker's view.'" *Id.* (quoting *Perry*, 460 U.S. at 46).

[6] The First Circuit noted that, should it apply forum analysis, it would treat a legislative meeting as "neither a traditional nor a designated public forum." *Curnin*, 510 F.3d at 29 n.4. Arguably, such an approach would reinforce Defendants' contention that the town meeting was a limited public forum.

[7] In *Curnin*, the First Circuit reviewed the denial of a preliminary injunction. *Id.* at 26.

as "town meeting legislators," and the town did not permit them to speak at its town meetings except at the discretion of the moderator.  *Id.* at 25 – 26.  The plaintiffs argued that this practice was unconstitutional because the town meetings were designated public forums.  *Id.* at 25.  The First Circuit rejected the plaintiffs' argument, and held that "[t]he First Amendment does not give non-legislators the right to speak at meetings of deliberating legislative bodies, regardless of whether they own property or pay taxes."  *Id.* at 26.  In support of its ruling, the Court observed:

> The New England town meeting is a special form of government dating back to the colonial era and often considered an exemplar of pure democracy.  *See* R. Tilden, *Town Government,* 38 B.U. L. Rev. 347, 348 (1958).
>
> Town meetings in colonial times were charged with administrative and judicial as well as legislative duties.  R. Johnson et al., *Town Meeting Time: A Handbook of Parliamentary Law* 4 (3d ed.2001).  Membership in town meetings was limited to those who belonged to the established church and owned the requisite amount of property.  Tilden, *supra,* at 356.  Attendance was compulsory, and those who arrived late were punished with a fine.  Johnson et al., *supra,* at 3.
>
> Other forms of government have emerged to carry out local administrative and judicial functions since the colonial era.  *Id.* at 4.  But town meetings continue to exist in New England as a town's legislative arm and are responsible for the traditional legislative functions of making laws and controlling spending.  *Id.*  One commentator notes that a town meeting's "votes in municipal government correspond to those of the General Court [state legislature] in the state government and of the Congress in the national government."  Tilden, *supra,* at 349.

*Id.* at 26.

Given the history of and purpose of town meetings, the First Circuit determined that the Supreme Court's standard forum analysis should not govern the assessment of public speech rights at New England town meetings.

> Forum analysis primarily concerns the use of government property for speech, and the extent to which government can restrict speech turns on the category to which property is assigned.  E. Chemerinsky, *Constitutional Law* 1126–27 (3d ed. 2006).  The Supreme Court has distinguished several types of forums, including traditional public forums, designated public forums, and non-public forums.  *Ridley v. Mass. Bay Transp. Auth.,* 390 F.3d 65, 76 (1st Cir. 2004).  This circuit has used the phrase

"limited public forums" to describe non-public forums, *id.* at 76 n. 4, and we adhere
to that usage here.

….

Forum analysis of any sort is inapposite in the context of complaints about the
deliberations of a legislative body, as Egremont's town meeting is.  We reject forum
analysis entirely as an inappropriate model to apply to the deliberations of a town
legislative body.

*Id.* at 28 – 29 (footnote omitted).

Defendant Town of Rumford conducts a legislative process to produce an annual budget,
pursuant to statutory authority, 30-A M.R.S. §§ 2524, 3001, and supplemental procedures set forth
in its municipal charter.  In this way, the process is similar to the process at issue in *Curnin*.  Unlike
the town in *Curnin*, however, Defendant Town of Rumford appears to permit "public comment"
at certain budget meetings, as it did at the September 19 meeting.  Logic would suggest that when
a legislative body permits public comment, the legislative body cannot withdraw its permission
selectively based on the content of the speech.  *See R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377,
382 (1992) ("Content-based regulations are presumptively invalid.").  Here, the record contains
no evidence to suggest that Defendants prohibited Plaintiff from commenting at the meeting.

Assuming that the Town's invitation of public comment includes the protection against the
unlawful regulation of speech based on content, the question is whether Defendant Puiia's request
that Plaintiff leave his signs outside the meeting room is actionable given Defendant Puiia's
assertion of qualified immunity.  Under the qualified immunity analysis, the issue is whether
Defendant violated a clearly established constitutional right.  In particular, the issue is whether on
September 19, 2013, an individual had a constitutionally-protected right to carry or display a sign
inside a meeting room in which legislative proceedings were conducted.  Plaintiff has cited no
authority from which one could discern that when a governmental entity permits public comment
during a meeting as part of the legislative process, the entity must also permit attendees at the

meeting to display signs.  In fact, insofar as "the Constitution does not grant to members of the public generally a right to be heard by public bodies making decisions of policy," a governmental official in Defendant Puiia's position could reasonably conclude that Plaintiff's speech rights were limited to the right to comment authorized by the Town.  *Minn. State Bd. for Cmty. Colls. v. Knight,* 465 U.S. 271, 283 – 84 (1984).[8]  In other words, on September 19, 2013, the law was not clearly established that a town or a town official must allow the display of signs inside the meeting room of a town deliberative body when the town invited public comment at the meeting.  Accordingly, Defendant Puiia is entitled to qualified immunity on Plaintiff's claim.[9]

**B.     Plaintiff's Claims against the Town of Rumford**

Defendant Town of Rumford argues that the Town is entitled to summary judgment because Plaintiff has not presented any evidence that would support a claim that Defendant Puiia excluded the signs from the meeting space pursuant to a municipal custom or policy.  (Motion at 15 – 16.)  Plaintiff contends that a solitary act by a final decision-maker can support a municipal liability claim.  (Response at 9 – 11.)

Because a municipality is not automatically responsible for a constitutional deprivation that arises from the conduct of municipal employees, Plaintiff must demonstrate that the municipality itself bears responsibility for the constitutional deprivation.  *Rodriguez-Garcia v. Miranda-Marin*, 610 F.3d 756, 769 (1st Cir. 2010) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)).  "[L]iability attaches to a municipality under § 1983 'only if the violation occurs

---

[8] *See also Carlow v. Mruk*, 425 F. Supp. 2d 225, 242-44 (D.R.I. 2006) (finding that qualified immunity existed for decision based on rule of order prohibiting nonresidents from speaking at annual meeting in light of the purpose of the annual meeting).

[9] Even if forum analysis were applied, Plaintiff has failed to present any evidence upon which a reasonable fact finder could conclude that Defendant Puiia's decision was content-based.  To the contrary, Defendant Puiia's assertion that the decision was content-neutral is uncontroverted.

pursuant to an official policy or custom.'" *Id.* (quoting *Welch v. Ciampa,* 542 F.3d 927, 941 (1st Cir. 2008)).

First, the record lacks any evidence that Defendant Town of Rumford maintains an official policy that prohibits signs at the Board's annual meetings or other board meetings.  A party, however, can establish the existence of a custom or policy by demonstrating that the alleged violation occurred through the decision of an official having final authority to establish municipal policy on the matter in question.  *Walden v. City of Providence, R.I.,* 596 F.3d 38, 55 (1st Cir. 2010); *Welch v. Ciampa,* 542 F.3d 927, 941 (1st Cir. 2008).

Plaintiff argues that Defendant Puiia had final decision-making authority regarding the Town's policy on signs at town meetings.  (Response at 9 – 10.)  Whether Defendant Puiia qualifies as a final decision-maker is a question of law, which requires an assessment of whether he was "responsible for establishing final policy with respect to the subject matter in question." *Walden*, 596 F.3d at 56 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)).

Plaintiff cites no evidence that would support a determination that the Board delegated to Defendant Puiia final decision-making authority regarding the ability of the public to display signs in a legislative session conducted as part of the annual budget process.  In addition, given that the budget process is a legislative function, and not an executive function, one cannot reasonably infer that Defendant Puiia, simply based on his position, had the authority to establish such a policy. Plaintiff thus has failed to present any facts that would support a claim of municipal liability.

## CONCLUSION

Based on the foregoing analysis, I recommend that the Court grant Defendants' Motion for Summary Judgment (ECF No. 32).

**NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum within fourteen (14) days of being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 28th day of January, 2016.